Good morning, ladies and gentlemen. Our first case for argument is Villas at Winding Ridge against State Farm Fire and Casualty Company. Mr. Byers. Thank you, Your Honor. May it please the Court. My name is Bill Byers. I represent Villas at Winding Ridge. I'd like to reserve five minutes for rebuttal. The fundamental question presented on this appeal is whether an insurance company can take advantage of its own ambiguous policy and appraisal process to the detriment of the insurer. State Farm, one of the issues we'd like to address is State Farm should not receive a windfall by mischaracterizing the appraisal award. As the district court found, the appraisers in this process did not address the issue of matching coverage. And so essentially what happened was there were 33 buildings at the Villas at Winding Ridge. The umpire evaluated only 13 of those buildings for shingle damage. And after the umpire determined that 20% of the shingles on those 13 buildings had damage to them, we asked, one of the appraisers asked for Winding Ridge, asked for the policy benefit to provide matching coverage because the shingles on those 13 buildings were discontinued and there was no reasonable match. What State Farm has said on appeal, well first what they said in the underlying summary judgment briefs was there was no matching coverage. But the district court erred in that regard because the district court misunderstood our argument. And so the district court, what they found was essentially that the policy did not provide coverage for an exact match. Mr. Byers, are you making any argument that the criteria for setting aside an arbitration award under the Federal Arbitration Act have been satisfied? So this is not an arbitration. It is an arbitration. It doesn't use that name, but it's an arbitration. And the criteria for evaluating it are functionally the same as those under the Arbitration Act. So I ask my question again. Are you contending that the criteria for setting aside an arbitration award have been satisfied? As far as it pertains to that question, Judge, the criteria, if the court evaluates it from that perspective... You know, the answer to my question is either yes or no, and then you can explain. Would you answer my question, please? Yes, Judge. So in our briefs we argued mistake as one of the criteria for setting aside the award. The basis for that mistake was essentially that the umpire... State Farm has taken the position that the umpire adjudicated all 33 buildings. But the clear testimony from the umpire was that it only applied to 13 buildings. Indiana case law is fairly clear that an appraisal is not an arbitration. But didn't the umpire award damages for the soft metal damage on all 33 buildings? And if so, how can you say this only applies to 13? The major issue in the appraisal process was the shingle damage, because that was the big ticket item. And so the umpire only evaluated shingle damage to 13 buildings. And the parties agreed on everything else? No, no. And so we made that very clear in our reply brief, that in order for an appraisal to be binding, there has to be an agreement of two out of the three. And so what was at issue was the shingle damage, and the umpire only looked at 13 buildings. But your appraiser only submitted for replacement of 13 buildings, the shingles on 13 buildings. Your own appraiser didn't say all of the shingles on all of the buildings needed to be replaced. He submitted for repairs on the other buildings, that's correct. And there was plainly no agreement on that. The State Farm's appraiser said that there was not one damaged shingle on any of the buildings. The umpire said, for the 13 I looked at, I found 20% shingle damage. Our appraiser said 13 needed to be replaced. Keep in mind that it's not necessarily 100% replacement for all the shingles to get a new roof. Can I back up to something a little more basic? What was the date of the supposed damage? June 13, 2013. What does the record tell us about the weather on that date? Well, there's a slight dispute about that. The weather report was validated by State Farm's appraiser as the damage occurring on June 13, 2013. There was also a weather event on June 12, 2013. A weather event. Was there in fact a hailstorm on June 12, 2013? It carried over. It started on June 12 and then carried over to June 13. The reason I'm asking is because this seems very unusual, because this claim wasn't even submitted until many months later, correct? That's true. April of 2014, approximately. After the Condominium Association had gone out to get a normal estimate for just replacing aged roofs, right? That's correct. Sounds pretty suspicious, I have to say. Well, and that's why we, in our reply brief, we dispelled the notion that this was by any means a questionable insurance claim. And the reason we did that was because State Farm itself came out and evaluated the damage and found that all the buildings had sustained hail damage. And they accepted the date of loss of June 13, 2013. So to the extent the court's concerned with whether this was a questionable hail claim, it really wasn't. It was just a situation where it's a volunteer homeowners association who doesn't go up and look at their roofs to see if they're damaged, and then when somebody finally did go and look, we reported the covered damage. And after having gotten an estimate for replacing a bunch of 20-year-old roofs, right? That estimate was never forthcoming. It was just simply an inspection by a roofing contractor. It was a very ballpark. It wasn't an itemized estimate at all. If the court's referring to the email with respect to the seven-day buildings, that was a preliminary inquiry only. And so once State Farm got involved, they in fact validated that every single building had sustained hail damage. One of the issues, our essential argument on the grounds, you may phrase it as setting aside the appraisal award. We don't really phrase it that way because, in our view, the appraisal award only applied as it pertains to shingle damage to 13 buildings. So by the clear terms of the appraisal process, there has to be an agreement of two out of the three. But again, how can you say that the appraisal award only applies to 13 buildings when it's clear looking at the backup documentation of the umpire's report that he awarded replacement for certain items on all 33 buildings, including soft metal damage? He clearly looked at all 33 buildings. Well, he testified that he didn't. And I put that testimony in my reply on page 4. But you're not disputing that his report and award of damage covered the soft metal damage on all 33 buildings, are you? I'm not. That was in there. The appraiser essentially accepted the soft metal damage itemization from Michael Scott, State Farm's appraiser. So that was the first line. And your client didn't dispute that soft metal damage, did it? No, soft metal damage really wasn't an issue. State Farm paid the bulk of the soft metal damage right from the very beginning. So the main issue in this appraisal to look at was the extent of the hail damage to the shingles on the buildings, and only 13 were looked at. So there is a process when you ask State Farm concerning what appraisal awards they will uphold, and State Farm clearly says an appraisal on the scope and extent of the loss is not binding. And that's in their own guidelines. And so now they want to kind of change things, since they got an appraisal award that they want, to say, well, scope and loss is binding. And we're countering that by essentially two ways. One, arguing that it's ambiguous, the appraisal provision is ambiguous, because State Farm literally takes it to mean something else. In the letter that they wrote the policyholder, they say that the appraisal may be binding. So in the letter dated September the 28th, let's see what I have here, sorry. This is docket entry 86-29, page 7 and 8. On page 8, State Farm tells the policyholder the appraisal process by which the amount of loss, if any, may be determined. It says appraisal is a process by which the amount of loss, if any, may be determined. Appraisal does not resolve coverage disputes. In other words, it's not a process by which coverage is determined for a particular loss or item of damage. And so that's important because it's different than, it shows that appraisal, for one, is different than arbitration, for example. They're two different things. And then the second reason is because now State Farm, after we pebble in the Southern District, is now trying to take advantage of appraisal awards that it wants to enforce. But at the same time, they're using their ambiguous appraisal provision to sidestep awards that they don't want to pay. And so we've documented that in the record. Since the appraisal provision itself is ambiguous, it's clear that the appraisers took into account the scope of the loss and the cause of the loss in making their determinations. Since State Farm's appraisal provision is ambiguous as to what awards it's going to pay, we're asking the court to find that the binding part of the determination is unenforceable. And then the second argument, rather than arguing that we have to set the appraisal aside, is just to say, very simply, there's a question of fact as to the scope of the appraisal award. Meaning, did this award apply to shingle damage to all 33 buildings? Or can the court look at the testimony and simply say the testimony supports that there was only an agreement of two of the three appraisers to shingle damage for 13 buildings? So Indiana case law has never established, the only case cited by either party on whether or not the appraisal is an affirmative defense was from a State Farm case from the Eastern District of Pennsylvania in Kessler. And in that case, the court evaluated State Farm's request to add appraisal as an affirmative defense to their answer, and the court ended up granting it. So our position is really very simple that, well, there is an appraisal award out there, but State Farm is the proponent of that defense for nonpayment for defense of the action, has to prove the scope of the award, or there's a question of fact. Mr. Byers, let me just make sure I understand this. I thought your position was that there are essentially two disputes about the scope of the appraisal. One is about shingle damage to the other 20 buildings. The other is about whether the appraiser thought it was his job, the umpire thought it was his job to decide coverage issues such as the obligation to match. Those are my arguments, Judge. Those are the two? Okay. On that issue, and the appraisers clearly did not take into account coverage and whether there was matching. He said, not my job. Not his job. And the district court made a finding that it was undisputed that the appraisal panel did not take into account coverage. So this is, again, different than an arbitration because if you look at, well, how does this all shake out after the appraisal process? So the appraisers make some findings, and then the policyholder and the insurance company simply apply those findings to the insurance policy because the appraisers very typically, and in this case, do not have a copy of the policy. So they don't know what the policy says. They don't know if it's a replacement cost coverage policy. They don't know if it's an ACV-only policy. They don't know what the deductible is. So you can't reach a final determination as to what the liability is owed. And if the court looks at the Atlas Construction case and the Weedman case, it's very clear under Indiana law the second step then is to apply the appraisal findings to the actual policy coverages. Here, 20% of the shingles were damaged, would make the roof look terrible, one out of every five shingles. And so that's why it's important, and State Farm agreed that the shingles couldn't be matched. That's why it's important to apply those policy coverages to the appraisal findings, and State Farm simply wouldn't do that. They wouldn't apply those policy benefits to the appraisal findings. Obviously, the remaining issues are going to have to be left to the briefs, but we would ask the court to reverse the trial court in this matter. The trial court misunderstood the argument on match, that we were advocating for an exact match. That's not what our position was. Thank you, counsel. Thank you, Judge. Mr. Krimer. Good morning. May it please the court, as high as it goes. I'm here today to ask this court to sustain a summary judgment that we believe was properly granted by Judge Walton Pratt. I'd like to begin by addressing the mistake issue, Your Honor, and Judge St. Eve's questions. We respectfully disagree that there's any mistake here. You must begin with the fact that the appraisal clause requires the two appraisers to identify their finding lost and then to submit their disagreement to the umpire. In this instance, they agreed, the two of them, by their estimates, agreed that there was soft metal damage to most of the buildings. They disagreed over the cost of replacing the soft metal, but not by a lot. Their fundamental disagreement was that the appraiser for Villas intended that it was necessary to replace 13 roofs on 13 buildings. So the disagreement that they submitted to the umpire was the cost of replacing soft metals and other gutters and other things and whether 13 buildings need to be replaced. What was their agreement on the other 20 buildings? Their agreement on the other 20 buildings, the only agreement on the other 20 buildings was that soft metals should be replaced. There was no agreement any greater than that in terms of the price, and I think ultimately the umpire found that some shingles around the turtle vents and other things might have to be replaced if they replaced the soft metals. We would ask the court to sustain the appraisal award in this case. Appraisal is a favored private procedure that is intended to have efficient and speedy adjudication of claims, and this court has indicated in past rulings that the court should indulge every reasonable presumption to sustain an appraisal award in the absence of fraud, mistake, or mis-seasons. So to what extent was State Farm bound by the appraisal award? Your Honor, I contend that State Farm was bound by the appraisal award. If there is an appraisal, we will still retain our right to deny the claim. That's in the policy, right? That allows for companies who have issued a reservation of rights of some kind to reserve coverage issues after an appraisal award has been determined. Right, and so does the insured have a similar right? Presumably the insured should bring a declaratory judgment action on coverage issues as a part of the appraisal process, Your Honor. Yeah, my problem, Mr. Trimble, with this approach, if this were just an arbitration of the claim, I would see how the FAA would apply, those standards would apply, it would be virtually impossible to set this aside. But the way Indiana, and for that matter some other states, run this appraisal process in the insurance context, there's plenty of room for confusion about what the appraiser is supposed to decide and what the court is supposed to decide. And here there seems to be a very confusing record. The umpire says, not my job to decide this matching issue. Your Honor, I think if you look at all the communications that the umpire had with Mr. Kurtz afterwards, first of all, the matching issue didn't come up in this appraisal process until after the umpire issued his report in which he found that it was unnecessary to replace the roofs on the 13 buildings. And indeed, he said he found little to no damage to these buildings. He entered an award for replacement of the soft metals, and then he entered what he characterized as an allowance for 20% for the shingles. And that's when, 20 days later, he gets a letter from Mr. Kurtz that has a GAF letter in it saying that it's five months old, saying that the shingles can't be matched. But I think you can infer from the communications that occurred thereafter, and I point you to his documents, which are 86-26, 86-27, 86-28, and 86-31. I think you can infer from that that he did not believe that it was necessary for the shingles on these buildings to be repaired or replaced and was simply allowing an allowance out of an abundance of fairness. Well, I understand that's your understanding. That's the way you want to present these communications, but why isn't that? There's enough confusion and contradiction. It would seem to me there's a pretty good argument for a trial on those issues. Your Honor, with all due respect to the argument Villas is making, I believe that the matching issue in this case, and all these cases are fact-sensitive to the particular case in terms of how the court applies these issues, that matching was a false narrative because this started with a proof of loss for $1,975,000 that was submitted in May of 2015 or March of 2015 to replace all of the buildings. This started even earlier in April of 2014 with an inquiry about replacing all of the buildings and asking a roofing company to replace all of the buildings. Even after the appraisal process was over, these buildings were all replaced. The roofs were all replaced. The claim still remains $1,005,000. It's in the record. I don't think you can infer from this record that they were going to repair these roofs. Look, Mr. Trimble, I understand there are plenty of reasons to be skeptical about this claim. Whether State Farm was skeptical on the right grounds, I don't know. But what troubles me is the way this appraisal process worked because that's the foundation for the summary judgment that was entered. Certainly a major part of it, yes, Your Honor. Is there any other part of it? No. I think that State Farm, from the day they got this claim to the very end, did all the things that would be expected of an insurance company, including agreeing to submit to the appraisal process and allowing it to proceed with a competent and impartial umpire who tried to do the right thing and who was confronted with a demand for matching. After he turned away the 13-building replacement and matching was raised, he still turned that away and repeatedly in his emails said, there's very little damage here, and the majority of these buildings already have mismatched shingle replacement. He was giving an allowance, and I think that's why he characterized it as an allowance. But this proceeded without State Farm's intervention. Under the policy, whose decision was it to decide if matching shingles were appropriate? Was that something for the appraiser to decide, or was that something for State Farm to decide? Your Honor, I would submit to you that in the law, it's a mixed question of coverage and the knowledge of competent investigators. What about in terms of the contract? From a coverage perspective, it's for the insurance company or the court to decide, but in the real world, as Judge Barker said in the W.E. Pebble case, these issues intermingle, and it is the province of competent estimators to look at the materials, to look at the type of shingle that's being used, to look at the circumstances, to decide whether comparable shingles are available, whether they create a uniform appearance, all the kinds of things that the courts would have an insurance company do. I feel like that consideration was given by this umpire in his subsequent communications where he, I think, made it very clear, I'm going to stand on this allowance, but I think you can infer that he was not viewing this as a case where these roofs needed to be replaced with matching shingles. That was going to probably happen when they replaced the roofs, clearly. So I've got a few minutes left here, but I would simply say to you that if you apply the standard for setting aside an appraisal award, there isn't anything in the law that the Seventh Circuit has decided or any other law has decided to find that this appraisal was improperly conducted. I don't think anybody's arguing, if I understood it correctly, that the appraiser was wrong kind of at a, I want to say, granular level with shingles, but the issue is what did he think his job was. Right. I can't deny what he said in his memo back to Mr. Kurtz, but at the same time he said it, he said, I'm going to stand on this allowance. No damage. No damage. I didn't find damage, any significant damage, and the majority of these 13 buildings have already been patched with mismatched shingles. So I think you can infer that it was the umpire's position that matching as a practical matter wasn't required because these buildings weren't likely going to be repaired, which is why it was an allowance, and that's how he characterized it and that's how he stood upon it. What impact should the fact that the village didn't inform State Farm of the unavailability of the matching shingles have on the court's analysis? I would say that obviously it was late coming to the process. The umpire had already done his work. He had already issued a report. The court should evaluate whether he acted impartially and fairly in at least evaluating what was given to him before he stood on his report and asked one party or the other, one appraiser or the other, to sign off on it. And I think the record reflects that he did do that. He didn't just reject it as out of hand. In terms of whether this provision is ambiguous, I respectfully would suggest to you that it is broad but not ambiguous. This is a provision that has been around for, I believe, over 100 years, and the language hasn't changed very much in those 100 years. And the question really is, is there sanctity in an appraisal award? Because if this is intended to be a private procedure that in an expensive and speedy manner disposes of insurance claims, we have standards for setting aside these awards. And if the standards don't apply, then every time someone, either an insured or an insurance company, receives an unfavorable appraisal award, we're back in court, then using 20-20 hindsight, trying to collaterally attack the appraisal award and find any basis that we can to do that. And so it is our position that there was no mistake here that this was a binding and fair and impartial process, and that it should be upheld. I have a little bit of time left, but if you have to answer any additional questions, I can conclude. Just one quick question. There's a fair amount of evidence here under seal. What is that and why? It's proprietary information concerning claims procedures and things that were produced in the course of the case that really don't pertain directly to this matter. But because of their proprietary nature, Magistrate Bensmore believed that it was appropriate to seal them. Thank you. Thank you, Your Honor. Thank you, counsel. The case is taken under advisement.